UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-24688-CIV-MORENO/O'SULLIVAN

YIRAL CARIDAD CARDONA,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

CASE NO. 16-24689-CIV-MORENO/O'SULLIVAN

SUSAN CHI,

     Movant,

v.

UNITED STATES OF AMERICA,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1 in Case No.16-cv-24688, 11/9/16) filed by Yiral Caridad Cardona (hereinafter "Cardona's Motion to Vacate") and the Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (DE# 1 in Case No. 16-cv-24689, 11/9/16) filed by Susan Chi (hereinafter "Chi's Motion to Vacate"), (collectively "Motions to Vacate"). This matter was referred to United States Magistrate Judge John J. O'Sullivan by the Honorable Federico A. Moreno for a Report and Recommendation in accordance with 28 U.S.C. § 636(b) (DE # 6 in Case No. 16-cv-24688, DE #5 in Case No. 16-cv-

24689, 11/14/16). Having carefully considered the applicable filings and the law and having held an evidentiary hearing on August 21, 2017, the undersigned respectfully recommends that the Motions to Vacate (DE# 1 in Case No.16-cv-24688 and Case No. 16-cv-24689, 11/9/16) be **DENIED**.

### BACKGROUND

Yiral Caridad Cardona (hereinafter "Cardona") and Susan Chi (hereinafter "Chi"), (collectively "movants") founded and operated Vista Home Health Services, Inc. ("Vista"). Stemming from their operation of Vista, the movants were charged by indictment in the Southern District of Florida with conspiracy to defraud the United Sates and pay kickbacks in violation of Title 18, United States Code, Section 371 (Count 1) and six counts of payment of kickbacks in connection with a federal health care program in violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) (Counts 2-7). See Indictment (DE# 3 in Case No. 13-cr-20474, 6/27/13).[1]

The case proceeded to trial. The government called numerous witnesses, including Yumidia Naranjo, Servando Raya and Armando Vega, who testified that the movants paid for patient recruitment. The movants presented their own testimony that the payments to Yumidia Naranjo's husband, Jose Guerrero, were for remodeling work performed by Mr. Guerrero, that the payments made to Mr. Vega were related to his marketing services and that payments made to Mr. Raya were for business development work.

Included in the Court's instructions to the jury was the following Eleventh Circuit

---

[1] The Court dismissed Counts 3 and 5 pursuant to a pre-trial motion filed by the government and dismissed Count 7 at the close of the government's case. See Order of Dismissal (DE# 89 in Case No. 13-cr-20474, 6/27/13); Judgment of Acquittal as to Count 7 Only (DE# 146 in Case No. 13-cr-20474, 10/23/13).

pattern jury instruction:

### JURY INSTRUCTION NO. 13

You will see that the indictment charges that a crime was committed "on or about" a certain date. The Government does not have to prove that the crime occurred on an exact date. The Government only has to prove beyond a reasonable doubt that the crime was committed on a date reasonably close to the date alleged.

The word "knowingly" means that an act was done voluntarily and intentionally and not because of a mistake or by accident.

**The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law. While a person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," the person need not be aware of the specific law or rule that her conduct may be violating or specific intent to commit a violation of this section**.

Jury Instruction No. 13 (DE# 135 at 16, 10/22/13) (emphasis added). The jury found the movants guilty of Counts 1-2, 4 and 6 of the Indictment. See Verdict (DE# 142 in Case No. 13-cr-20474, 10/22/13).

At the sentencing hearing, the Court imposed a two-level enhancement based on obstruction of justice, finding that the movants had testified falsely at trial. See Sentencing Hearing (DE# 215 at 74-76 in Case No. 13-cr-20474, 6/22/14). The Court sentenced the movants to 60 months' imprisonment on Count 1 and 60 months' imprisonment on Counts 2, 4 and 6 to run consecutively to the sentence imposed on Count 1, for a total of 120 months' imprisonment each. See Judgments in a Criminal Case (DE# 185-186 in Case No. 13-cr-20474, 12/23/13). The Court further imposed concurrent terms of three years of supervised release on all counts and ordered restitution in the amount of $371,873 for Cardona and $371,955 for Chi with each movant to pay a $400 special assessment. Id.

The movants appealed their sentences and the restitution amounts. See United States v. Chi, 616 F. App'x 950, 952-53 (11th Cir. 2015) (per curiam); Mandate (DE# 227 at 4 in Case No. 13-cr-20474, 10/5/15). The Eleventh Circuit affirmed the sentences imposed by the District Court, but vacated and remanded the issue of restitution for further proceedings. Id.[2]

On November 9, 2016, the movants filed the instant Motions to Vacate. See Cardona's Motion to Vacate (DE# 1 in Case No.16-cv-24688, 11/9/16); Chi's Motion to Vacate (DE# 1 in Case No. 16-cv-24689, 11/9/16). On December 8, 2016, Cardona filed a Notice of Unsworn Declaration under Penalty of Perjury Pursuant to 28 U.S.C. § 1746 (DE# 8 in Case No. 16-cv-24688, 12/8/16). On December 8, 2016, Chi filed a Notice of Unsworn Declaration under Penalty of Perjury Pursuant to 28 U.S.C. § 1746 (DE# 7 in Case No. 16-cv-24689, 12/8/16).[3] The government filed its response in

---

[2]  In November 2015, the parties stipulated to a joint and several restitution amount of $14,810.80. See Amended Judgments in a Criminal Case (DE# 231-32 in Case No. 13-cr-20474, 11/16/15).

[3] The movants' unsworn declarations state in part that:

At no point did [trial counsel] advise [the movants] that any payment to a patient recruiter in any manner or form was considered a kickback or that [the movants'] lack of intent to violate the Medicare Kickback statute based on [their] ignorance or unawareness that the payment arrangement with the patient recruiters violated the Medicare kickback statute was irrelevant.

Had [trial counsel] advised [the movants] before trial that lack of intent to violate the Medicare Kickback statute was not a defense to the payment arrangement with the patient recruiters, and that the payment arrangement [the movants] had with the recruiters was illegal[, the movants] would have admitted [their] guilt and accepted responsibility for [their] actions instead of proceeding to trial.

Notice of Unsworn Declaration Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746 (DE# 8 at 2 in Case No. 16-cv-24688, DE# 7 at 2 in Case No. 16-cv-24689, 12/8/16).

opposition to the instant motions on December 29, 2016. See Response to Magistrate's Order to Show Cause (DE# 9 in Case No. 16-cv-24688, DE# 8 in Case No. 16-cv-24689, 12/29/16) (hereinafter "Response"). On January 12, 2017, the movants filed their replies. See Reply to the Government's Memorandum of Fact and Law in Response to Magistrate's Order to Show Cause (DE# 10 in Case No. 16-cv-24688, 1/12/17) (hereinafter "Cardona's Reply"); Reply to the Government's Memorandum of Fact and Law in Response to Magistrate's Order to Show Cause (DE# 9 in Case No. 16-cv-24689, 1/12/17) (hereinafter "Chi's Reply"). At the undersigned's request, the movants filed a notice citing to portions of the trial transcript where they contend trial counsel either elicited testimony or argued in support of a defense that the movants did not intend to violate the Medicare anti-kickback statute (as opposed to an intent to do something the law forbids). See Movants' Corrected Notice in Response to Magistrate Judge's Order (DE# 15 in Case No. 16-cv-24688, DE# 14 in Case No. 16-cv-24689, 7/31/17).

On August 21, 2017, the undersigned held an evidentiary hearing. The movants testified on their own behalf and the government presented the testimony of David Donet (Ms. Cardona's former counsel) and Joaquin Mendez (Ms. Chi's former counsel).

At the evidentiary hearing, the undersigned denied the movants' request to present expert testimony on the issue of ineffective assistance of counsel in light of Eleventh Circuit case law discounting the usefulness of expert testimony on this issue. See Freund v. Butterworth, 165 F.3d 839, 863 n. 34 (11th Cir. 1999) (stating that "[p]ermitting 'expert' testimony to establish ineffective assistance is inconsistent with [the Eleventh Circuit's] recognition that the issue involved is a mixed question of law and fact that the court decides."); Provenzano v. Singletary, 148 F.3d 1327, 1331-32 (11th Cir. 1998) (on whether to hold an evidentiary hearing, stating that "the

reasonableness of a strategic choice is a question of law to be decided by the court, not a matter subject to factual inquiry and evidentiary proof. Accordingly, it would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by state courts, by the district court, and by this Court, each in its own turn."), Harvey v. Warden, Union Corr. Inst., 629 F.3d 1228, 1242 n.19 (11th Cir. 2011) (stating that "because the reasonableness of counsel's actions under Strickland is a question of law for the court to decide, expert testimony regarding performance deficiencies carries little, if any, weight.").

At the conclusion of the August 21, 2017 evidentiary hearing, Ms. Cardona's counsel read into the record additional trial transcript citations for the Court's consideration.

This matter is ripe for adjudication.

## **FACTUAL FINDINGS**

### 1.  **Susan Chi**

Ms. Chi hired attorney Joaquin Mendez to represent her in the underlying criminal case at the recommendation of Ms. Cardona's attorney, David Donet. Prior to her arrest, Ms. Chi had no experience with the criminal justice system and had never spoken to an attorney.

Mr. Mendez graduated from the University of Pennsylvania Law School in 1986 and is licensed in Florida. Mr. Mendez has participated in 50 to 75 federal criminal trials.

Mr. Mendez met individually with Ms. Chi on numerous occasions. He discussed the charges against Ms. Chi, reviewed the evidence, discussed what the government would have to prove to obtain a conviction, what Ms. Chi's sentencing possibilities were

and discussed interviewing witnesses. Mr. Mendez also discussed the anti-kickback statute with Ms. Chi[4] and told her that the statute required that the government prove that Ms. Chi acted willfully. Mr. Mendez never told Ms. Chi that ignorance of the anti-kickback statute was a defense to the charges.

On multiple occasions, Mr. Mendez and Ms. Chi also met with Ms. Cardona and Ms. Cardona's attorney, Mr. Donet. There was a tacit joint defense agreement between the movants. During these joint meetings the movants discussed the business of Vista. The movants explained how Vista was started, how they ran the business and how they made payments to employees and others.

Ms. Chi discussed Vista's payment arrangements with Mr. Mendez. According to Mr. Mendez, any checks coming in or going out of Vista's operating account would have been discussed. Mr. Mendez was particularly interested in Vista's payment arrangement with Servando Raya for ostensibly providing marketing and business development because Mr. Mendez believed that was where the government's focus would be at trial. Ms. Chi told Mr. Mendez that the payments to Mr. Raya were to help spread the word about Vista, generate goodwill and grow the practice.

Ms. Chi never told Mr. Mendez that she was paying anyone any amount of

---

[4] At the evidentiary hearing, Ms. Chi testified that her attorney never reviewed the anti-kickback statute with her prior to trial. The undersigned does not find this testimony credible. Ms. Chi is serving a substantial term of imprisonment and has an interest in testifying favorably. It is highly improbable that a criminal defense attorney, much less a criminal defense attorney with Mr. Mendez' legal experience would fail to discuss the statute under which Ms. Chi was charged. By all accounts Ms. Chi met with Mr. Mendez on multiple occasions. It is not credible that the anti-kickback statute was never discussed in those meetings. Accordingly, the undersigned credits Mr. Mendez' testimony that he reviewed the anti-kickback statute with Ms. Chi over the testimony of Ms. Chi.

money to bring patients to Vista.[5] Prior to trial, Ms. Chi did not believe that the payment arrangements with Mr. Raya and Mr. Vega were kickbacks and her attorney never told her that they were kickbacks. However, Mr. Mendez was never told that the people receiving payments were patient recruiters. Mr. Mendez told Ms. Chi that Mr. Raya's payment arrangement did not appear to Mr. Mendez to be an illegal kickback.

Ms. Chi wanted to proceed to trial regardless of the sentence that might be imposed. Ms. Chi was adamant that she had done nothing wrong and that she would never do something wrong or illegal. Ms. Chi insisted she understood the laws against patient recruiters. Based on his discussions with Ms. Chi, Mr. Mendez believed that Ms. Chi had not committed an offense and that Ms. Chi would not "survive" a change of plea hearing, which would have required her to admit criminal conduct.

Mr. Mendez did not persuade Ms. Chi to plead guilty. He advised Ms. Chi of the possible consequences of going to trial, but ultimately, he believed it was Ms. Chi's decision to proceed with trial.

---

[5] At the evidentiary hearing, Ms. Chi testified that she told Mr. Mendez that she and Ms. Cardona paid Servando Raya and Armando Vega for referring patients to Vista. The undersigned does not find this testimony credible. Had Mr. Mendez known of the true nature of Vista's arrangement with Mr. Raya and Mr. Vega, the undersigned does not believe Mr. Mendez would have called Ms. Chi to testify falsely that Mr. Raya and Mr. Vega were being paid for marketing work. To do so, would have violated Mr. Mendez' ethical obligation to the Court.

During the evidentiary hearing, the undersigned had the opportunity to listen to the testimony and observe the candor and demeanor of all the witnesses and finds Mr. Mendez more credible than Ms. Chi. See United States v. Boulette, 265 F. App'x 895, 898 (11th Cir. 2008) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002) (noting that "[c]redibility determinations are within the province of the fact finder 'because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses.'").

Ms. Chi wanted to testify at trial.[6] Mr. Mendez did not recall whether he advised Ms. Chi as to whether it was in her best interest to testify. Mr. Mendez prepared Ms. Chi to testify at trial and described her preparation as an ongoing process. Although he did not use a script, Mr. Mendez did discuss with Ms. Chi possible questions she should expect on direct and cross-examination. Mr. Mendez believed Ms. Chi was ready to testify at trial.[7]

The defense strategy pursued by Mr. Mendez at trial was that there was insufficient evidence from which a jury could find that Ms. Chi had acted willfully, with the specific intent to violate the law.

The defendants sought to include the Eleventh Circuit pattern jury instruction on willfulness which the Court read to the jury at trial.

### 2.      Yiral Caridad Cardona

Ms. Cardona was out of the country when she learned of the Indictment. Ms. Cardona retained attorney David Donet to represent her because Ms. Cardona's husband had done information technology ("IT") work for Mr. Donet. At the time, Ms. Cardona had no experience with the criminal justice system.

---

[6] At the evidentiary hearing, Ms. Chi testified that had she known the payment arrangements were kickbacks, she would have pled guilty and not have gone to trial. For the reasons already discussed in this Report and Recommendation, the undersigned credits the testimony of Mr. Mendez that Ms. Chi was adamant in proceeding to trial and that she would not "survive" a guilty plea.

[7] According to Ms. Chi, the decision to have Ms. Chi testify at trial was abruptly made by Mr. Mendez when the Court asked the defense to call their next witness. According to Ms. Chi, Mr. Mendez told her she was going to testify and Ms. Chi told Mr. Mendez she did not want to take the stand. According to Ms. Chi, she did not feel prepared, she felt embarrassed and did not feel comfortable presenting her testimony. The undersigned does not find this testimony credible. It is highly improbable that an experienced criminal defense attorney like Mr. Mendez would abruptly and unilaterally make the decision to call a defendant to the stand without any pre-trial preparation, given the significant risks of subjecting a criminal defendant to cross-examination.

Mr. Donet graduated from the University of New Hampshire School of Law in 1997 and is licensed in Florida. Except for a brief two-and-a-half year period, Mr. Donet's practice has always included criminal defense work. Mr. Donet has participated in over 105 jury trials. Almost all of Mr. Donet's practice consists of state and federal criminal cases. Between 18 and 24 of Mr. Donet's cases have been health care fraud cases.

Mr. Donet reviewed the Indictment and spoke to the prosecutor before meeting with Ms. Cardona and her husband. Mr. Donet reviewed potential defenses with Ms. Cardona. He also reviewed the government's discovery and copies of checks that were listed in the Indictment as kickbacks.

Mr. Donet and Ms. Cardona discussed the anti-kickback statute[8] and its safe harbor provisions. Mr. Donet made it clear to Ms. Cardona that whether she knew about the specific anti-kickback statute did not matter. According to Mr. Donet, Ms. Cardona insisted that the payments were made for marketing purposes or for remodeling work.[9]

Mr. Donet told Ms. Cardona that her chances of succeeding at trial were not very

---

[8] At the evidentiary hearing, Ms. Cardona testified that Mr. Donet never reviewed the anti-kickback statute with her. The undersigned does not find this testimony credible. Ms. Cardona is serving a substantial term of imprisonment and has an interest in testifying favorably. As with Ms. Chi, the undersigned observed Ms. Cardona's candor and demeanor at the evidentiary hearing and does not believe an experienced criminal defense attorney like Mr. Donet would have met with his client on multiple occasions and never addressed the statute under which his client was charged.

[9] One of the discrepancies between Mr. Donet and Ms. Cardona's testimony concerns how Ms. Cardona described the nature of the payments made to Mr. Raya and Mr. Vega to her attorney. According to Mr. Donet, Ms. Cardona insisted that the payments were for marketing work. Ms. Cardona testified that she told her attorney that the payments to Mr. Raya and Mr. Vega were for recruiting patients. As with Mr. Mendez, the undersigned does not believe Mr. Donet would have called Ms. Cardona to present knowingly false testimony at trial.

high because there were a lot of payments that appeared to be kickbacks.[10] He explained to Ms. Cardona that because the marketing arrangement was tied to the number of patients, that it would be considered a kickback. Mr. Donet also told Ms. Cardona she could not pay for patients. Mr. Donet explained to Ms. Cardona that these payments were against the anti-kickback statute, but if she did not do it willfully, that would be the defense they would present at trial.

Mr. Donet had conversations with Ms. Cardona about the possibility of pleading guilty.[11] Mr. Donet did not recall whether he recommended to Ms. Cardona that she plead guilty. Generally, Mr. Donet tells his clients the costs and benefits of pleading guilty and allows his clients to make that decision. Mr. Donet explained to Ms. Cardona that if the jury did not believe her, if the judge did not believe her, she would be punished more harshly for obstruction of justice. Ms. Cardona was adamant that she did nothing wrong and wanted to proceed to trial.

At trial, the defense presented by Mr. Donet was that the payments were for marketing and remodeling work. But if the payments were considered kickbacks, then there was no willfulness.

---

[10] According to Ms. Cardona, Mr. Donet never discussed with her the chances of success if they proceeded to trial or what would happen if they lost at trial. Ms. Cardona testified that she and Mr. Donet never discussed any risks and the only course of action presented to her was going to trial. For the reasons stated in this Report and Recommendation, the undersigned finds Mr. Donet more credible than Ms. Cardona.

[11] Ms. Cardona testified that Mr. Donet never broached the possibility of entering a guilty plea. In fact, Ms. Cardona testified that she did not know the word "plea" existed prior to trial. According to Ms. Cardona, had Mr. Donet explained to Ms. Cardona that her lack of knowledge of the anti-kickback statute was not a defense or that the way Vista was being operated was wrong, she would not have gone to trial and would have pled guilty. The undersigned does not find this testimony credible. It is highly improbable that any criminal defense attorney, much less an attorney of Mr. Donet's legal experience, would not discuss the possibility of entering a guilty plea with a client facing a considerable sentence if convicted at trial.

## STANDARD OF REVIEW

The movants claim their counsel rendered ineffective assistance in the underlying criminal case. The Eleventh Circuit applies the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687-88 (1984) to analyze claims of ineffective assistance of counsel. Strickland requires a movant to prove that: (1) counsel's representation of the movant fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defense. Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (citing Strickland, 466 U.S. at 687). "Judicial scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. The reasonableness of counsel's conduct must be evaluated from counsel's perspective at the time. Id. "Trial counsel's representation is judged by a standard of 'reasonableness under prevailing professional norms,' and there is a 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" Rosin v. United States, 786 F.3d 873, 877 (11th Cir. 2015) (quoting Strickland, 466 U.S. at 688-89). Prejudice is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

## ANALYSIS

The movants raise three grounds of ineffective assistance of counsel. See Cardona's Motion to Vacate (DE# 1 at 14-19 in Case No.16-cv-24688); Chi's Motion to Vacate (DE# 1 at 14-19 in Case No.16-cv-24689). The movants argue that Mr. Mendez and Mr. Donet rendered ineffective assistance by: (1) "failing to advise [the movants] that lack of intent to violate the Medicare Anti-Kickback statute was not a legally cognizable defense at trial in light of [the movants'] specific referral arrangement in which [they] made payments to Medicare patient recruiters after services were furnished to patients and Medicare paid [the movants];" (2) "presenting a legally

12

noncognizable lack of intent defense at trial that [the movants'] specific referral arrangement, in which [the movants] made payments to Medicare patient recruiters after services were furnished to patients and Medicare paid [the movants], did not violate the Medicare Anti-Kickback statute" and (3) "eliciting testimony from [the movants] at trial in support of a legally noncognizable defense that [the movants] did not intend to violate the Medicare Kickback statute by making payments to Medicare patient recruiters after services were furnished to patients and Medicare paid [the movants]." Id.

**1.  Counsels' Pre-Trial Advice Concerning the Anti-kickback Statute**

Ground One states that counsel rendered ineffective assistance by "failing to advise [the movants] that lack of intent to violate the Medicare Anti-Kickback statute was not a legally cognizable defense at trial in light of [the movants'] specific referral arrangement in which [they] made payments to Medicare patient recruiters after services were furnished to patients and Medicare paid [the movants]." Cardona's Motion to Vacate (DE# 1 at 14 in Case No.16-cv-24688); Chi's Motion to Vacate (DE# 1 at 14 in Case No.16-cv-24689).

Ground One is not supported by the record. Mr. Mendez testified that he never told Ms. Chi that ignorance of the anti-kickback statute was a defense to the charges. Similarly, Mr. Donet made it clear to Ms. Cardona that whether she knew about the specific anti-kickback statute did not matter. Both attorneys advised their clients that the government would need to prove willfulness and that lack of willfulness was a defense to the case. This advice was consistent with the Eleventh Circuit's pattern jury instruction which states in part:

> **The word "willfully" means that the act was committed voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law. While a**

**person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," the person need not be aware of the specific law or rule that her conduct may be violating or specific intent to commit a violation of this section**.

Jury Instruction No. 13 (DE# 135 at 16, 10/22/13) (emphasis added).

The record evidence shows that Mr. Mendez and Mr. Donet did not tell the movants that the lack of intent to violate the Medicare Anti-Kickback statute was a viable defense to the case. Because counsel did not render ineffective assistance, the movants also fail to meet the prejudice prong. Accordingly, Ground One lacks merit and should be DENIED.

**2.      No Ineffective Assistance at Trial**

Grounds Two and Three concern counsel's alleged ineffective assistance at trial. According to the movants, counsel rendered ineffective assistance by "presenting a legally noncognizable lack of intent defense at trial that [the movants'] specific referral arrangement, in which [the movants] made payments to Medicare patient recruiters after services were furnished to patients and Medicare paid [the movants], did not violate the Medicare Anti-Kickback statute" and by "eliciting testimony from [the movants] at trial in support of a legally noncognizable defense that [the movants] did not intend to violate the Medicare Kickback statute by making payments to Medicare patient recruiters after services were furnished to patients and Medicare paid [the movants]." Cardona's Motion to Vacate (DE# 1 at 16, 19 in Case No.16-cv-24688); Chi's Motion to Vacate (DE# 1 at 16, 19 in Case No.16-cv-24689).

Counsel for the movants pursued a legally cognizable defense, that the movants did not act willfully. Although counsel at times used the term "specific intent" it is clear from a review of the trial transcript and from the testimony presented at the evidentiary hearing that the defense presented at trial was that the movants did not have the intent

14

to do something the law forbids. This defense is entirely consistent with the Eleventh Circuit's pattern jury instruction and is a legally cognizable defense. See United States v. Starks, 157 F.3d 833, 837-38 (11th Cir. 1998) (citing 11th Cir. Pattern Jury Instr. 9.1) and United States v. Vernon, 723 F.3d 1234, 1256 (11th Cir. 2013) (noting that in order to find that a person acted willfully under the anti-kickback statute, the person must have acted "'voluntarily and purposely, with the specific intent to do something the law forbids, that is with a bad purpose, either to disobey or disregard the law.'") (quoting 11th Cir. Pattern Jury Instr. 9.1); see also U.S. ex rel. Williams v. Health Mgmt. Assocs., Inc., No. 3:09-CV-130 CDL, 2014 WL 2866250, at *13 (M.D. Ga. June 24, 2014) (stating "[i]t is not necessary to prove that a defendant acted with specific intent to violate the Anti-Kickback Statute. . . . Rather, it is simply necessary to prove that the defendant acted with the intent to do something the law forbids – even if he is not aware of the specific law his conduct may violate.").

In the instant case, the strategy pursued by counsel was reasonable and "[fell] within the wide range of reasonable professional assistance." Rosin, 786 F.3d at 887. Because counsel did not render ineffective assistance, the movants also fail to meet the prejudice prong. Accordingly, Grounds Two and Three lack merit and should be DENIED.

## RECOMMENDATION

Based on the foregoing, the undersigned respectfully **RECOMMENDS** that the Motions to Vacate (DE# 1 in Case No.16-cv-24688 and Case No. 16-cv-24689, 11/9/16) be **DENIED**.

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to file

15

objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. See 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140, 149 (1985); Henley v. Johnson, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this **24th** day of August, 2017.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE


Copies provided to:
United States District Judge Moreno
All counsel of record